Richard R. Thomas, Bar No. 7-5865
Vonde M. Smith, Bar No. 6-2832
SMITH LC
Post Office Box 8729
Jackson, Wyoming 83002
T: 307-201-6000
E: rthomas@smith-lc.com
E: vsmith@smith-lc.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| HRH, LLC, a Wyoming limited liability company, | Case No. 2:18-cv-00104-SWS |
| Plaintiff, | |
| vs. | |
| TETON COUNTY, WYOMING, a political subdivision of the state of Wyoming, et al., | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF THE ALLIANCE DEFENDANTS [Docs.87 and 88]**

## TABLE OF CONTENTS

I.     HRH'S RESPONSE TO THE "STATEMENT OF UNDISPUTED FACTS" OF THE ALLIANCE DEFENDANTS. ("PRSOF"). ............................................................. 1

II.    HRH'S ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO THE ALLIANCE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ("PASOF") ............................................................................... 3

III.   ARGUMENT. ......................................................................................... 16

       A.    Summary Judgment Standard. ............................................................ 16

       B.    The Alliance Defendants Are Not Entitled to Summary Judgment on HRH's Claim For Malicious Prosecution. .................................................. 17

             1.    As an Objective Matter, the Alliance Defendants Lacked Probable Cause For the Second Appeal, Because the Sufficiency Determinations Were Not "Final Administrative Orders" of the County Planning Director or Engineer. .......................................................................... 17

             2.    As an Objective Matter, the Alliance Defendants Lacked Probable Cause For the Third Appeal, Because the Planning Director's Rejection Letter Was Not a "Final Administrative Order" Required Under Wyoming Law for an Appealable Decision ............................................................ 19

             3.    The Alliance Defendants Filed the Second and Third Appeals With Malice. ............................................................................... 20

             4.    The Second and Third Appeals Were Terminated in Favor of HRH. ...... 21

                   a.    The second and third appeals were actions against HRH. ............ 21

                   b.    There is no requirement under Wyoming's common law of malicious prosecution that the prior action be resolved on the merits ......................................................................... 22

                   c.    In any event, the second and third appeals were resolved on the merits in HRH's favor. ............................................................. 22

       C.    The Alliance Defendants Are Not Entitled to Summary Judgment on HRH's Claim For Tortious Interference with Prospective Economic Advantage/Business Expectancy. ...................................................................................... 23

             1.    HRH had two valid business expectancies. ............................................. 23

             2.    The Alliance Defendants were aware of HRH's business expectancies... 25

             3.    The Alliance Defendants intentionally and improperly interfered with HRH's business expectancies. ............................................................. 25

D.      The Wrongful Conduct of the Alliance Defendants Caused Damage to HRH. ..... 28

E.      The Alliance Defendants Are Not Entitled to Immunity Under the Petition Clause of the First Amendment. ........................................................................................ 29

IV.    CONCLUSION ................................................................................................................ 30

# TABLE OF AUTHORITIES

## Cases

*Ahearn v. Anderson-Bishop P'ship*, 946 P.2d 417 (Wyo. 1997)...................................................... 26

*Ahrenholtz v. Laramie Econ. Dev. Corp.*, 2003 WY 149, 79 P.3d 511 (Wyo.) ..................... 25, 26

*Basin Elec. Power Co-op.-Missouri Basin Power Project v. Howton*,
   603 P.2d 402 (Wyo. 1979)....................................................................................................... 26

*Board of County Commissioners v. Exxon Mobil Corp.*, 55 P. 3d 714 (Wyo. 2002).................... 18

*Boyer v. Bugher*, 19 Wyo. 463, 120 P. 171 (1912)....................................................................... 20

*Brown v. Monticello State Bank of Monticello*, 420 N.W.2d 475 (Iowa 1988)............................. 19

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
   208 F.3d 885 (10th Cir. 2000) ................................................................................................ 29

*Cates v. Eddy*, 669 P.2d 912 (Wyo. 1983)..................................................................................... 28

*Chipouras v. A J & L Corp.*, 223 Va. 511, 290 S.E.2d 859 (1982) ............................................... 19

*City of San Jose v. Office of Comm'r of Baseball*,
   No. C-13-02787 RMW, 2013 WL 5609346 (N.D. Cal. Oct. 11, 2013) .................................. 24

*Consumers Filling Station Co. v. Durante*, 79 Wyo. 237, 333 P.2d 691 (1958).................... 17, 21

*CSX Transp. Inc. v. Gilkison*, No. CIV.A. 5:05CV202, 2008 WL 925550
   (N.D.W. Va. Apr. 2, 2008) ...................................................................................................... 29

*Douglass v. Wyoming Dept. of Transportation*, 187 P. 3d 850 (Wyo. 2008)............................... 18

*Ebzery v. City of Sheridan,* 982 P. 2d 1251 (Wyo. 1999) ............................................................. 18

*Eleutian Tech., LLC v. Glob. Educ. Techs.*, LLC, No. 07-CV-181-J, 2009 WL 10672363 (D.
   Wyo. Jan. 26, 2009) ............................................................................................................... 16

*Employers' Fire Ins. Co. v. Love It Ice Cream Co.*, 64 Or. App. 784, 670 P.2d 160 (1983)........ 27

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).............................. 16

*Estrada v. City of Las Cruces*, No. CIV 09-10 RB/CG, 2010 WL 11626773
   (D.N.M. Jan. 12, 2010) ............................................................................................................ 19

*Examination Mgmt. Servs., Inc. v. Kirschbaum*, 927 P.2d 686 (Wyo. 1996) .............................. 26

*Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*,
   192 F. Supp. 3d 1215 (D. Kan. 2016)...................................................................................... 25

*G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 571 N.E.2d 1363 (1991) ........ 27

*Henning v. Miller*, 44 Wyo. 114, 8 P.2d 825 (1932) ................................................. 17

*Hillside Assocs. v. Stravato*, 642 A.2d 664 (R.I. 1994) ........................................ 22, 27

*Huber v. Thomas*, 45 Wyo. 440, 19 P.2d 1042 (1933) .............................................. 21

*Kelly-Springfield Tire Co. v. D'Ambro*, 408 Pa. Super. 301, 596 A.2d 867 (1991) ................... 27

*Krug v. Reissig*, 488 P.2d 150 (Wyo. 1971) ...................................................... 22

*LDE Corp. v. Dyno Nobel, Inc.*, No. 04-CV-0137-J, 2005 WL 8155435
     (D. Wyo. Sept. 13, 2005) .................................................................. 29

*Manna Funding, LLC v. Kittitas Cty.*, 173 Wash. App. 879, 295 P.3d 1197 (2013) .................. 25

*Martin v. Wing*, 667 P.2d 1159, 1162 (Wyo. 1983) ............................................ 23, 25

*McIntosh v. Wales*, 21 Wyo. 397, 134 P. 274 (1913) .............................................. 22

*Merit Energy Co. v. Department of Revenue*, 313 P. 3d 1257 (Wyo. 2013) .......................... 18

*MGTC, Inc. v. Public Service Commission*, 735 P. 2d 103, 106 (Wyo. 1987) ....................... 18

*O'Connor v. Tice*, 281 Va. 1, 704 S.E.2d 572 (2011) ............................................. 19

*Reed v. Bennett*, 312 F.3d 1190 (10th Cir. 2002) ............................................... 16

*Scherer, II v. Laramie Reg'l Airport Bd.*, 2010 WY 105, 236 P.3d 996 (Wyo. 2010) ............... 29

*Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 765 P.2d 498 (1989) ..................... 17

*Silver v. Mendel*, 894 F.2d 598 (3d Cir. 1990) ................................................. 27

*Slavens v. Bd. of Cty. Comm'rs for Uinta Cty.*, 854 P.2d 683 (Wyo. 1993) ....................... 19

*Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260 (10th Cir. 2001) ............. 16

*Sunshine Custom Paints & Body, Inc. v. S. Douglas Highway Water & Sewer Dist.*,
     2007 WY 206, 173 P.3d 398 (Wyo. 2007) .................................................... 28

*Tel. & Data Sys., Inc. v. Am. Cellular Network Corp.*, 966 F.2d 696 (D.C. Cir. 1992) ........... 24

*Texas W. Oil & Gas Corp. v. Fitzgerald*, 726 P.2d 1056 (Wyo. 1986) ............................. 28

*Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976 (10th Cir. 2002) ...................... 16

*Univ. of Wyoming v. Gressley*, 978 P.2d 1146 (Wyo. 1999) ....................................... 19

*Whitham v. Feller*, 2018 WY 43, 415 P.3d 1264 (Wyo. 2018) ...................................... 23

*Wood v. CRST Expedited, Inc.*, 2018 WY 62, 419 P.3d 503 (Wyo. 2018)............................. 28

*Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227 (10th Cir. 2018) ........................... 16

*Zeller v. Consolini*, 235 Conn. 417, 667 A.2d 64, 68 (1995) .................................... 22

**Rules**

Rule 41(b)(1), *Wyo. R. Civ. P.* .................................................................................... 23

**Treatises**

*Restatement (Second) of Torts* § 767 ....................................................... 26, 27

*Restatement (Second) of Torts* § 680 ............................................................. 27

*Restatement (Second) of Torts* § 766 ....................................................... 24, 25

Pursuant to Rule 56, Fed. R. Civ. P., and Local Rule 7.1(b)(2), Plaintiff, HRH, LLC ("HRH"), hereby responds in opposition to the Motion For Summary Judgment of Defendants Alliance of Route 390 Neighbors (the "Alliance"), Richard D. Jaquith, Patricia P. Jaquith, James M. Speyer, Gerald J. Kitchen, and Diana Kitchen (collectively "the Alliance Defendants.")[1].

## I.   HRH'S RESPONSE TO THE "STATEMENT OF UNDISPUTED FACTS" OF THE ALLIANCE DEFENDANTS. ("PRSOF").

1.   Not disputed.

2.   Not disputed.

3.   Disputed.  The Alliance was formed by those persons organizing to object to the efforts of HRH to develop the Mar J Property. (See, HRH's Additional Statement Of Undisputed Material Facts In Opposition To The Alliance Defendants' Motion For Summary Judgment ["PASOF"] ¶ 34)

4.   Not disputed so far as it describes certain terms of the 2015 Bar J Contract. (But see, PASOF ¶¶ 1-4)

5.   See response to paragraph 4 above.

6.   Not disputed. (See, PASOF ¶¶ 1-4)

7.   HRH does not dispute that the Bar J Contract, with amendments, did not expressly contain a condition precedent regarding approvals from Teton County. (But see, PASOF ¶¶ 1-4)

8.   Not disputed. (See, PASOF ¶¶ 31-32)

9.   Disputed.  (See, PASOF ¶¶ 17-18)

10.   Not material. (See, PASOF ¶¶ 17-18)

11.   HRH does not dispute that one purpose of the LDRs is to establish and govern the process for zoning changes in Teton County.

12.   Disputed. LDR 8.8.3(A) does not provide for "robust public participation."

13.   Not disputed. Not material.

---

[1] HRH shall refer to Defendants Gerald J. Kitchen, Diana Kitchen, James M. Speyer, Patricia P. Jaquith, and Richard D. Jaquith, collectively as the "Individual Defendants."

14. Not disputed. Not material.

15. Not disputed. Not material.

16. Not disputed. Not material. (See, Section II. B. 1., fn 26 below)

17. Disputed. Not material. (See, PASOF ¶¶ 19-30, 33-42)

18. Not disputed. (See, PASOF ¶¶ 19-30, 33-42)

19. Disputed. (See, PASOF ¶¶ 19-30, 33-42)

20. Not disputed.

21. Not disputed.

22. Disputed. (See, PASOF ¶¶ 19-30, 33-42)

23. Not disputed.

24. Disputed. (See, PASOF ¶¶ 11-16, 33-42)

25. Not disputed.

26. Disputed. (See, PASOF ¶¶ 19-30, 33-42)

27. Not disputed. Not material. (See, PASOF ¶¶ 19-30, 33-42)

28. HRH does not dispute the language of the LDR, but it is not material to this motion.

29. Not material.  (See, PASOF ¶¶ 19-30, 33-42)

30. HRH does not dispute the language of its application but disputes the rest of this paragraph. (See, PASOF ¶¶ 17-18)

31. See HRH's response to paragraph 30 above.

32. Not disputed. (See, PASOF ¶¶ 23-30, 33-42)

33. The submissions of the Alliance Defendants speak for themselves.

34. Not disputed.

35. Not material. (See, PASOF ¶¶ 23-30, 33-42)

36. Not material. (See, PASOF ¶¶ 23-30, 33-42)

37. Disputed. (See, PASOF ¶¶ 23-30, 33-42)

38. HRH does not dispute that the Alliance Defendants filed the third appeal before the second appeal was dismissed.  (See, PASOF ¶¶ 19-30)

39.   Not disputed.

## II.   HRH'S ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO THE ALLIANCE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ("PASOF")

### The Option Contract Between HRH and Humphrey, LLC

1.      On April 19, 2015, HRH entered into a written option agreement with Humphrey, LLC ("Humphrey"), to purchase 21.2 acres of land on Wyoming Highway 390, in Teton County, Wyoming ("the Bar J Property")(the "2015 Bar J Contract"). (See Exhibit 1 hereto). The purpose of the option was to enable HRH to develop the Bar J Property. (Exhibit 1, at p. 1)

2.      Although not required by the option agreement, HRH and Humphrey intended that HRH exercise the option after Teton County had approved the entitlements for HRH's development. (25 March 2019 Deposition of Stephen Hancock ["3/25/19 Hancock Depo."] 78:24-79:6 [2]; August 6, 2019 Deposition of Thomas J. Reynolds ["8/6/19 Reynolds Depo."]: 154:2-155:3; 169:21-172:5[3])

3.      Under the 2015 Bar J Contract, HRH's option was set to expire May 1, 2016.  On April 29, 2016, HRH and Humphrey executed an "Amended and Restated Option to Purchase Agreement" ("2016 Bar J Agreement"). The 2016 Bar J Agreement extended HRH's option to December 31, 2016. (Exhibit 4 hereto).

4.      On February 2, 2017, but effective December 31, 2016, HRH and Humphrey agreed in writing to extend HRH's option period under the 2016 Bar J Contract to September 30, 2017 ("2017 Extension Agreement"). (Exhibit 5 hereto). The 2017 Extension Agreement expressly stated that the purpose of the extension was "to allow for the achieving of necessary development approvals as required by the contemplated development of the property by HRH…." (Id. at p. 1, at 3rd "Whereas" clause.)

### HRH's Effort to Develop the Bar J Property

5.      After signing the 2015 Bar J Contract, HRH investigated development of the Bar J

---

[2] Excerpts from the 3/25/19 Hancock Depo. are collected in Exhibit 2 hereto.
[3] Excerpts from the 8/6/19 Reynolds Depo are collected in Exhibit 3 hereto.

Property through the acquisition of unused development rights from the Teton Pines Limited Liability Company ("Teton Pines") and bringing the Bar J Property into the Teton Pines planned unit development. (See Exhibit 6 hereto; 3/25/19 Hancock Depo. 45:24-47:3)

6.      In January 2016, Teton County instructed HRH to abandon its effort to obtain the unused development rights from Teton Pines and to instead file an application with Teton County to amend the Bar J Master Plan. (3/25/19 Hancock Depo. 109:4-111:2; August 6, 2019 Deposition of Stephen Hancock ["8/6/19 Hancock Depo."] 35:2-36:17;[4] April 2, 2019 Deposition of Thomas J. Reynolds ["4/2/19 Reynolds Depo."] 87:16-91:2;[5]  See also Exhibit 9 hereto).  Teton County told HRH that by changing course and seeking to amend the Bar J Mater Plan, HRH would be on a more direct path to get approval and would have a high probability of approval if HRH focused on intensity and density. (4/2/19 Reynolds Depo. 89:13-25).

7.      Consequently, HRH changed course and thereafter sought to amend the Bar J Master Plan.  On April 1, 2016, HRH met with Teton County for a pre-application conference on the subject of its intended application to amend the Bar J Master Plan.  Following that meeting, Teton County's Planner sent an email to those attending the meeting ("pre-application conference summary"). (See Exhibit 10 hereto)

## The Automatic Stay of LDR 8.8.3(C)

8.      Article 8 of the Teton County, Wyoming Land Development Regulations ("LDRs") allows for an "appeal" to the Board of County Commissioners of final decisions and interpretations made by the Teton County Planning Director or Engineer.  (LDR 8.8.3(A): 2015 version attached hereto as Exhibit 11)

9.      The filing of an appeal under Article 8 creates a "contested case" and the appeal is expressly governed by the contested case rules adopted by Teton County pursuant to the Wyoming Administrative Procedures Act, W.S. 16-3-101, et seq. (LDR 8.8.3(F)).  Thus, an appeal under Article 8 of the LDRs is a quasi-judicial proceeding.

---

[4] Excerpts from the 8/6/19 Hancock Depo. are collected in Exhibit 7 hereto.
[5] Excerpts from the 4/2/19 Reynolds Depo. are collected in Exhibit 8 hereto.

10.     LDR 8.8.3(C) states as follows: "An appeal shall stay all further action related to the subject appeal, unless a stay would cause imminent peril to life or land."

**The First Appeal**

11.     On May 2, 2016, Defendant Alliance of Route 390 Neighbors ("the Alliance") filed an appeal ("the first appeal") under Teton County LDR 8.8.3 of Teton County's April 1, 2016 pre-application conference summary.  (Exhibit 12 hereto)

12.     When it filed the first appeal, the Alliance immediately created a contested case. (LDR 8.8.3(F)).

13.     After it received the first appeal, and acting through its Planning Director, Mr. Tyler Sinclair, Teton County applied the automatic stay of LDR 8.8.3(C) and stopped all aspects of HRH's application review process.  (Exhibit 13 hereto)

14.     On May 23, 2016, one week after the Alliance Defendants filed the first appeal, Teton County filed a motion to dismiss the first appeal. (Exhibit 14 hereto) Teton County based its motion to dismiss of various co-extensive grounds, including "W.R.C.P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted…." (Exhibit 14 hereto, at pp. 1, 4-5, 20) In its brief in support of the motion to dismiss, Teton County articulated the various reasons for its contention that the first appeal failed to state a claim under Rule 12(b)(6).  In particular, Teton County argued that the April 1, 2016 pre-application conference summary was not the "final agency action" [6]required to support a valid claim for appeal. (Exhibit 14 hereto, at pp. 2, 13-19) In its brief, Teton County presented the clear Wyoming law requiring a "final agency action" in order to state a legally valid claim for appeal.  *Id.*

15.     After intervening in the first appeal, on July 14, 2016, HRH filed a Motion to Lift Stay, seeking to have Teton County lift the automatic stay it had imposed under LDR 8.8.3(C). (Exhibit 15 hereto)  In that motion, HRH advised Teton County and the Alliance of the existence

---

[6] Teton County and the Board use the phrases "final agency action" and "final administrative order" interchangeably.

of a time sensitive option agreement to purchase the Bar J Property. (*Id.* at ¶ 12) [7]

16.     On August 2, 2016, HRH, Teton County, and the Alliance agreed to dismiss the first appeal. HRH's application process could at that point begin to move forward.

### HRH's Application to Amend the Bar J Master Plan

17.     HRH filed its application to amend the Bar J Master Plan on March 2, 2017. (Exhibit 19 hereto).[8] Teton County identified HRH's application for an amendment to the Bar J Master Plan as PUD2017-0002 and Sketch Plan, SKC2017-0003. (*Id.*)   According to HRH's designated expert, Scott Pierson, that application was a "reasonable, credible application" with a "reasonable chance of being approved." (Exhibit 20 hereto, at p. 6; Deposition of Scott Pierson ["Pierson Depo."]  88:21-89:20 [9]).

18.     Thereafter, in a letter dated March 3, 2017, Mr. Roby Hurley, Principal Planner for Teton County in the Planning & Development Department, deemed EVA2016-0008 sufficient under LDR 8.2.5. (Exhibit 22 hereto) On March 16, 2017, Mr. Roby deemed PUD2017-0002 and Sketch Plan, SKC2017-0003 sufficient under the LDRs. (Exhibit 23) Mr. Hurley's two letters shall be hereinafter referred to as "the sufficiency determinations."   At the time he wrote and sent the sufficiency determinations, Mr. Hurley was the "Principal Planner" for Teton County. He was not the "Planning Director." Tyler Sinclair was the Planning Director.  (Deposition of Roby Hurley ["Hurley Depo"] 38:24-39:14). [10]

### The Second Appeal

19.     On March 30, 2017, the Alliance and Defendants Speyer and Jaquiths filed an appeal ("the second appeal") of Mr. Hurley's sufficiency determinations on EVA2016-0008, PUD2017-

---

[7] Throughout its application process, HRH continued to advise Teton County and the Alliance Defendants that the automatic stay was time sensitive. (*See,* Email from Jim Lubing to Erin Weisman, dated April 8, 2017, Exhibit 16 hereto; Exhibit 17 hereto, at section II and section III; Exhibit 18 hereto, at section II.)

[8] The application also included an application for an Environmental Assessment ("EA"), to which Teton County assigned the number EVA2016-0008. The application included the County's consultant's completed EA and analysis.

[9] Excerpts from the Pierson Depo. are collected at Exhibit 21 hereto.

[10] The excerpts of Mr. Hurley deposition are found at Exhibit 24 hereto.

0002, and SKC2017-0003. (Exhibit 25 hereto).

20.    On April 11, 2017, Teton County, the Alliance, and Defendants Speyer and Jaquiths stipulated that HRH could intervene in the second appeal and, on that same day, the Teton County Board of County Commissioners ("the Board") granted HRH permission to intervene. (Exhibit 26 hereto).  In that order, the Board acknowledged and the Alliance Defendants agreed that HRH's application for development of the Bar J Property had given rise to the second appeal. (Exhibit 26 at p. 1, ¶ 2)

21.    On May 1, 2017, Teton County and HRH each filed a motion to dismiss the second appeal.  In its motion to dismiss, among other issues, HRH sought dismissal of the second appeal on the grounds that the sufficiency determinations were not "final agency actions" and could not present a viable claim on appeal. (Exhibit 27 hereto, at § I.B.)  In its motion to dismiss, Teton County sought dismissal of the second appeal under Rule 12(b)(6), Wyo. R. Civ. P., among other grounds.  (Exhibit 28 hereto, at pp. 2, 7-8) In its brief in support of the motion to dismiss, Teton County articulated the various reasons for its contention that the second appeal failed to state a claim under Rule 12(b)(6).  In particular, Teton County argued that the sufficiency determinations were not the "final agency actions" required to support a valid claim for appeal. (Exhibit 28 hereto, at pp. 17-25)  In its brief, Teton County presented the clear Wyoming law requiring a "final agency action" in order to state a legally valid claim for appeal.  *Id.*

22.    On June 27, 2017, after receiving the recommendations of the appointed Hearing Officer, the Teton County Board of County Commissioners ("the Board") granted the motions to dismiss of Teton County and HRH.  The Board found, as a matter of law, that the sufficiency determinations were not "final agency actions" and not appealable.  (Exhibit 29 hereto at ¶¶ 31-37) Based upon this finding, the Board dismissed the second appeal under Rule 12(b)(1), Wyo. R. Civ. P., and under Rule 12(b)(6), Wyo. R. Civ. P., for failure to state a claim upon which relief can be granted. (Exhibit 29 at ¶ 31 and p. 17) [11]  Neither the Alliance, Speyer, nor the Jaquiths appealed

---

[11] In the same order, the Board also granted summary judgment against the Alliance, Speyer, and the Jaquiths on the grounds that they lacked standing to bring the second appeal. (Exhibit 29, at p. 17)

that dismissal to the Teton County, Wyoming, District Court.

### The Third Appeal

23.    On March 15, 2017, the Alliance, the Jaquith Defendants, and the Kitchen Defendants submitted a written request to Teton County seeking a "Zoning Compliance Verification" and/or a formal interpretation of the LDRs as they relate to the Bar J Master Plan ("the letter requests")(Exhibit 30 hereto).   Teton County declined to process the two letter requests and rejected them, concluding that the two letter requests raised issues that were not independent from Teton County's prior sufficiency determinations, referred to above ("rejection letter"). (Exhibit 31 hereto)

24.    On March 30, 2017, the Alliance, the Jaquith Defendants, and the Kitchen Defendants appealed the rejection letter ("the third appeal"). (Exhibit 32 hereto)

25.    On April 26, 2017, Teton County gave HRH notice that, as a result of the second and third appeals, and pursuant to LDR 8.8.3(C), it had stayed any further action on HRH's application to amend the Bar J Master Plan. (Exhibit 33 hereto)

26.    On May 8, 2017, Teton County, the Alliance, the Jaquith Defendants, and the Kitchen Defendants stipulated that HRH could intervene in the third appeal and, on that same day, the Board granted HRH permission to intervene. (Exhibit 34 hereto).   In that order, the Board acknowledged and the Alliance Defendants agreed that HRH's application for development of the Bar J Property had given rise to the third appeal. (Exhibit 34 at p. 1, ¶ 2)

27.    On May 12, 2017, Teton County and HRH each filed a motion to dismiss the third appeal.  In its motion to dismiss, among other issues, HRH sought dismissal of the third appeal on the grounds that the rejection letter was not a "final agency action" and could not present a viable claim on appeal. (Exhibit 35 hereto, at § I.A.)   In its motion to dismiss, Teton County sought dismissal of the third appeal under Rule 12(b)(6), Wyo. R. Civ. P., among other grounds.  (Exhibit 36 hereto, at pp. 2, 20-21) In its brief in support of the motion to dismiss, Teton County articulated the various reasons for its contention that the third appeal failed to state a claim under Rule 12(b)(6).  In particular, Teton County argued that the rejection letter was not the "final agency

action" required to support a valid claim for appeal. (Exhibit 36 hereto, at pp. 20-27)  In its brief, Teton County presented the clear Wyoming law requiring a "final agency action" in order to state a legally valid claim for appeal.  *Id.*

28.    Notably, in its motion to dismiss the third appeal, Teton County openly questioned the motive of the Alliance, the Jaquith Defendants, and the Kitchen Defendants in filing the third appeal.  Teton County stated that "[o]ne can surmise that the Contestants intend to stall HRH, LLC's applications in hopes that they will be withdrawn or never processed at all." (Exhibit 36 at p. 25)

29.    On July 10, 2017,  after receiving the recommendations of the appointed Hearing Officer, the Teton County Board of County Commissioners ("the Board") granted the motions to dismiss of Teton County and HRH.  The Board found, as a matter of law, that the rejection letter was not a "final agency actions" and not appealable.  (Exhibit 37 hereto at ¶¶ 23-27) Based upon this finding, the Board dismissed the second appeal under Rule 12(b)(1), Wyo. R. Civ. P., and under Rule 12(b)(6), Wyo. R. Civ. P., for failure to state a claim upon which relief can be granted. (Exhibit 37 at p. 13) [12]  Neither the Alliance, the Jaquith Defendants, nor the Kitchen Defendants appealed the dismissal of the third appeal to the Teton County, Wyoming, District Court

30.    At the time the Board dismissed the third appeal, HRH had eighty-one (81) days remaining on its option to purchase the Bar J Property.  At that point, HRH's application review process for its proposed amendment to the Bar J Master Plan required more than 81 days to complete.  (See Exhibit 20, at p. 21)

### Humphrey Refuses to Extend the Option Agreement

31.    On August 14, 2017, HRH requested an additional extension to the option agreement from Humphrey. (Exhibits 38 and 39 hereto)  Because of the previous appeals and resulting delays, and because of the ease of any objector to delay HRH's application as a result of the automatic

---

[12] In the same order, the Board also dismissed the third appeal on the grounds that the Alliance, the Jaquith Defendants, and the Kitchen Defendants lacked standing to bring the third appeal. (Exhibit 37, at p. 13)

stay of the LDRs, Humphrey refused to grant an extension of the option beyond the then-current expiration date of September 30, 2017. (Exhibits 40 and 41 hereto; Deposition of Babe Humphrey ["Humphrey Depo."] 162:4-164:16[13] )

32.   Faced with Humphrey's refusal to extend the option to purchase the Bar J Property and insufficient time to complete its previously stayed application to amend the Bar J Master Plan, HRH withdrew the application. (Exhibit 43 hereto)

### <u>Knowledge and Malicious Intent of the Alliance Defendants</u>

33.   Braddy was the spokesperson and president for the Alliance.  (October 1, 2019 Deposition of Nelson Braddy ["Braddy Depo."] 46:21-47:7 [spokesperson], 49:17-20 [spokesperson], 52:13-25 [president]; [14] See also D. Kitchen Depo. ["D. Kitchen Depo"] 36:14–20 [Alliance Defendants made "consensus decision" to have Braddy as president][15]; See also Exhibit 45 hereto, at ECF 1 [Alliance "designate[s] Nelson Braddy as a spokesperson for the group]; See also Exhibit 46 hereto, at ECF 1 [Braddy states in letter that he is "speaking for the 390 Alliance"]; See also Exhibit 47 hereto, at ECF 1 [Alliance letter referring to Braddy as "spokesperson"]; See also Exhibit 48 hereto, at ECF 1 [email from Mrs. Jaquith referring to Braddy as the "president"]).

34.   The Individual Defendants began to oppose HRH's efforts to develop the Bar J Property in late 2015.  (October 1, 2019 30(b)(6) Deposition of the Alliance ["Alliance Depo."] 13:19-15:5 [Individual Defendants began to organize themselves to oppose HRH sometime between August and November 2015];[16] See also Exhibit 50 hereto, at ECF 1 [Alliance Constitution and Bylaws showing Alliance formed on November 23, 2015).

35.   The Alliance Defendants all approved the filing of all three appeals.  They all participated in reviewing pleadings and making changes to the language used in the pleadings. (October 9, 2019 Deposition of Richard Jaquith ["R. Jaquith Depo"] 37:19-25 [the appeals were

---

[13] Excerpts of the Humphrey Depo are collected in Exhibit 42 hereto.
[14] Excerpts from the Braddy Depo. are collected in Exhibit 44 hereto.
[15] Excerpts from the D. Kitchen Depo. are collected in Exhibit 74 hereto
[16] Excerpts from the Alliance Depo. are collected in Exhibit 49 hereto.

all discussed and approved by the Alliance Defendants. "[T]he group made numerous changes in the land language involved."];[17] See also October 8, 2019 Deposition of Gerald Kitchen ["G. Kitchen"] 44:14-45:11 [the Alliance Defendants all discussed and contributed suggestions to actions the group should take], 46:11-47:14 [the Alliance Defendants all agreed before filing each of the appeals];[18]).

36.   The Alliance Defendants knew HRH was attempting to buy the Bar J Property through a time-sensitive option.  They knew about the option at least as early as May 8, 2016, well before they filed the second and third appeals.  (Braddy Depo. 38:5-39:1 [One of the Alliance's supporters overheard Sandy Humphrey say that HRH's option expired December 31, 2016], 61:10-21 [Braddy knew that HRH was intending to purchase the Bar J Property and he assumed that HRH and Humphrey had a business relationship]; See also Alliance Depo. 26:3-12 [From the date the Alliance was formed to October 2017, the Alliance assumed that Humphrey and HRH had a business relationship to acquire the Bar J property]; See also R. Jaquith Depo. 32:1-33:14 [Mr. Jaquith knew of some document between HRH and the Humphreys that entitled HRH to proceed with the applications on behalf of the Bar J property]; See also October 9, 2019 Deposition of Patricia Jaquith ["P. Jaquith Depo."] 18:23-20:8 [Mrs. Jaquith aware of "some contract or business relationship"], 49:15-50:20 [aware of the option, wrote about the "option almost being up."], 52:25-53:25 [Peter Ordway told Mrs. Jaquith that the option was up 12/31);[19] See also October 9, 2019 Deposition of James Speyer ["Speyer Depo."] 16:1-18 [Speyer received an email dated July 23, 2016 stating that Sandy Humphrey said the option expired December 31, 2016], 46:1-47:5 [at time the Alliance filed the second appeal, Speyer knew of an option agreement between HRH and the Humphrey family];[20] See also G. Kitchen Depo. 13:20-14:8 [in June 2015 Mr. Kitchen heard HRH say it had the option to buy the property], 20:7-19 [Mr. Kitchen knew about the option as early as June 2015]; See also Exhibit 55 hereto, at ECF 1 [July 23, 2016 email from Braddy stating

---

[17] Excerpts from the R. Jaquith Depo. are collected in Exhibit 51 hereto.
[18] Excerpts from the G. Kitchen Depo. are collected in Exhibit 52 hereto.
[19] Excerpts from the P. Jaquith Depo. are collected in Exhibit 53 hereto.
[20] Excerpts from the Speyer Depo. are collected in Exhibit 54 hereto.

HRH's option expires December 31, 2016]; See also Exhibit 56 hereto, at ECF 1 [May 8, 2016 Alliance letter stating HRH "has an option to purchase the Bar J Property, owned by [Humphrey]"]; See also Exhibit 57 hereto, at ECF 1 [July 19, 2016 email from Mrs. Jaquith stating that the option is up 12/31]).

37.    The Alliance Defendants wanted to delay HRH's application.  In communications amongst themselves, they discussed "delays," "stall[ing] the project," "tactic[s] to delay," and "obstacles" and "roadblocks" to HRH moving forward with its application.  One of the Alliance Defendants even referred to the Alliance's efforts to roadblock HRH as "war."  They desperately wanted HRH to fail in its application to develop the Bar J.   (Braddy Depo. 27:1-29:3 [acknowledging expense and delay would be problematic to HRH], 33:25-34:7 [Braddy admits delay by opposing the HRH development was a good thing from his perspective], 36:2-36:7 [Braddy encouraged Alliance members to keep sustained pressure on HRH by filing the appeals with the county to create the biggest delays]; See also Speyer Depo. 38:10-39:11 [Speyer wanted to stop HRH's efforts to use development rights from Teton Pines because he feared that could allow HRH to develop the Bar J]; See also D. Kitchen Depo. 21:7-22:4 [Mrs. Kitchen refers to the Alliance's "continuing efforts of HRH to develop the Bar J Property" as "war"]; See also G. Kitchen Depo. 44:4-10 [Mr. Kitchen admits he wanted HRH's application to fail]; See also Exhibit 58 hereto, at ECF 1-2 [email from Braddy recognizing that Alliance efforts could delay the project for "up to a year" and that the delays "would buy the Alliance a few more months to organize."]; See also Exhibit 59 hereto, at ECF 1 [email from Braddy thanking Alliance Defendants for their work, which led to "in nine months [HRH] has not gotten a single thing accomplished!!!" … "if the Appeal sticks, [HRH is] potentially facing a huge delay before an application can even be filed" … "[w]e have stalled the project and that's why they are scratching their heads."]; See also Exhibit 60 hereto, at ECF 1 [email from Braddy saying HRH and Humphreys "are feeling the frustrations of delay that are so deadly in the development business. I guess our 'little actions' are having the desired effect on [HRH] and P&D."]; See also Exhibit 61 hereto, ECF 1-2 [Braddy email stating, "[n]ow after a full year, [HRH] is exactly where they started.  We stalled them for several months

with our [a]ppeal...[t]hanks to all that have worked for this success." Another Braddy email referring to Alliance's efforts to oppose HRH, "I think we hit a home run here… [w]e put up a pretty big obstacle here."]; See also Exhibit 62 hereto, at ECF 2 [Braddy email where he stated if HRH moved forward, "such an action will possibly set the table for another lawsuit.  That would immediately stop the process and create further delay.  A delay like that might be the nail in the coffin that we want."]; See also Exhibit 63 hereto, ECF 1-2 [Braddy email stating "I think we should appeal the EA, thereby further delaying the approval process." Another Braddy email stating, "I think [the EA] [has] provided us with ample grounds to use this report as one of the tools to object to the Bar J development and create a new delay and roadblock to moving forward."]; See also Exhibit 64 hereto, at ECF 2 [email from Jim Speyer referring to appealing "the EA which would delay the application process"]; See also Exhibit 65 hereto, at ECF 14, 18 [handwritten notes from Diana Kitchen, "one of our goals-delay" … "ways to cause delay."]; See also Exhibit 66 hereto, at ECF 1 [Speyer email in which he referred to the "appeal of the EA as a tactic to delay…I personally believe that the more we delay the project, the better negotiating position we will have"]; See also Exhibit 67 hereto, at ECF 1 [Speyer email, "[w]e have 30 days to appeal the EA and I think we have little to lose by doing this since it delays the project."]).

38.    Before filing the appeals, the Alliance Defendants knew that filing an appeal would trigger the automatic stay of 8.8.3(C) and cause delay in HRH's application.  They felt they had "little to lose by" filing appeals because doing so would work in their favor by delaying HRH's project.  (Braddy Depo. 7:25-8:6 [Braddy knew filing appeals would create a stay]; See also Alliance Depo. 19:10-20:7 [Alliance knew filing appeal would cause automatic stay "because we read the LDRs, and we understood it"]; See also R. Jaquith Depo. 21:14-22:13 [Mr. Jaquith knew that filing the first, second, and third appeals, would each individually trigger the automatic stay]; See also P. Jaquith Depo. 28:19-29:23 [Mrs. Jaquith knew at the time of the filing of the second and third appeals that the appeals would trigger an automatic stay]; See also Speyer Depo. 21:17-20 [Mr. Speyer knew at least as early as March of 2017 that filing an appeal would trigger the automatic stay], 31:18-33:2 [Mr. Speyer knew that appealing the EA would delay the project],

35:12-23 [Speyer knew filing an appeal would delay HRH's application] 43:18-21 [Speyer knew appeal would trigger stay]; See also D. Kitchen Depo. 25:4-8 [Mrs. Kitchen knew that filing the third appeal would trigger the automatic stay]; See also G. Kitchen Depo. 17:12-15 [Mr. Kitchen knew that filing the third appeal would trigger the automatic stay], 35:10-13 [Mr. Kitchen knew the stays would happen when the Alliance Defendants filed the appeals]; See also Exhibit 67 hereto, at ECF 1 [Speyer email, "we have little to lose" by appealing the EA "since it delays the project."]).

39.    The Alliance Defendants knew that a delay in HRH's application could jeopardize HRH's deal with Humphrey for the Bar J Property.  The Alliance Defendants also knew that the Humphrey family was upset and frustrated with the delays caused by the appeals, but they went forward with their delays and were not disappointed when the option expired.  (Braddy Depo. 41:13-24 [Braddy believed as of February 18, 2017 that Humphrey family was getting angry at delays]; See also Alliance Depo. 20:8-15 [The Alliance not disappointed when option expired]; See also P. Jaquith Depo. 61:7-19 [Mrs. Jaquith heard HRH's counsel say that the Alliance's actions put the option in peril]; See also D. Kitchen Depo. 23:10-25:3 [Mrs. Kitchen heard that Sandy Humphrey expressed that HRH's option would expire December 31, 2016 and that there would be no approval for any plan by that date]; See also Exhibit 55 hereto, at ECF 1 [email from Braddy dated July 23, 2016, "HRH's option … expires December 31, 2016…pretty clear their [sic.] will be no approval for any plan by that date."]; See also Exhibit 62 hereto, at ECF 2 [email from Braddy stating, "[t]he things that members of the Humphrey family have said publically about the Alliance and its members tells me they are very angry at the delays, hate all of us…"]).

40.    The Alliance Defendants knew that a delay in HRH's application would cause the project to be more expensive.  (See Braddy Depo. 27:1-29:3 [Braddy aware that delay in construction project is very costly], 35:12-36:7 [Braddy encouraged appeals to keep sustained pressure on HRH and to increase costs]; See also P. Jaquith Depo. 35:3-10 [Mrs. Jaquith aware that HRH's lawyer represented that stays were costing money to go away from HRH]; See also G. Kitchen Depo. 13:7-11 [Mr. Kitchen aware that delaying the project may increase cost of the

project]; See also Exhibit 58 hereto, at ECF 1-2 ["protracted, expensive legal fight" … "both expense and delay will be very problematic to the Bar J developers" … "[o]ur opposition to the Bar J will eventually involve substantial legal expense" … "[i]f we file protest…we might have a chance of catching Hancock off guard and surprise him at the money he's going to have to spend to fight us." … "[HRH] spends a lot of money"]; See also Exhibit 59 hereto, at ECF 1 ["[h]e's spent a bunch of money on an EA and now, if the Appeal sticks, he's potentially facing a huge delay before an application can be filed.  All the while interest rates on construction loans are increasing."]; See also Exhibit 60 hereto, at ECF 1 ["our 'little actions' are having the desired effect on the Developers and P&D. That's why we need to keep sustained pressure on Hancock that creates the biggest delays and additional costs."]; See also Exhibit 68 hereto, at ECF 1 ["all of these appeals and stays have made it possible that the money will go away"]).

41.   The Alliance Defendants doubted that their first appeal was ripe for appeal, but they filed it anyway.  (P. Jaquith Depo. 15:24-17:19 [Mrs. Jaquith acknowledged that being turned down on ripeness could happen, but she was not sure since she is not an attorney], 37:6-39:17 [Mrs. Jaquith acknowledges that she wrote in an email that there was some question whether the Alliance had standing]; See also Exhibit 60 hereto, at ECF 1-2 [Braddy email, "if we lose on ripeness." Mrs. Jaquith email acknowledging hearing officer would likely turn down first appeal for lack of ripeness]; See also Exhibit 69 hereto, at ECF 2 [Mrs. Jaquith email expressing Alliance not sure whether they had standing to file the first appeal]).

42.   The Alliance Defendants read Teton County's motion to dismiss the first appeal at the time it was filed.  (R. Jaquith Depo. 17:18-25).

## HRH's Damages

43.   HRH incurred expenses of $356,931.65 pursuing its development application for the Bar J Property. (Exhibit 70 hereto, at pp. 3-4).

44.    HRH's option to purchase the Bar J Property expired on September 30, 2017. Without the delays cause by the second and third appeals, HRH had a reasonably certain likelihood of obtaining approval from Teton County on HRH's application to amend the Bar J Master Plan

in July of 2017, well prior to the September 30, 2017, expiration of HRH's option. (Exhibit 20 hereto, at pp. 17-21; Pierson Depo. 88:21-89:20)

45.    On September 30, 2017, the "as entitled" value of the Bar J Property was $17,300,000. (Expert Report of Allison Free, Exhibit 71 hereto, at p. 77)  Had HRH been able to exercise the option and purchase the Bar J Property as of September 30, 2017, HRH would have been required to pay Humphrey $16,000,000 for that property. (See Exhibit 5 hereto)

46.    Had HRH continued with its development of the Bar J Property as described in its application to amend the Bar J Master Plan, HRH would have obtained net profit of $20,347,100. (Report of Scott Hampton, with supplement, Exhibits 72 and 73 hereto, at ¶ 4 of Exhibit 38.)

## III.   ARGUMENT.

### A.    Summary Judgment Standard.

In evaluating a motion for summary judgment, this Court must "assume the truth of the non-moving party's…assertions and resolve all inferences in its favor." *Eleutian Tech., LLC v. Glob. Educ. Techs*., LLC, No. 07-CV-181-J, 2009 WL 10672363, at *4 (D. Wyo. Jan. 26, 2009) Moreover, "[b]efore the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its 'initial responsibility' of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).  Where the moving party fails to carry its initial burden, "the nonmoving party has no burden at all and summary judgment should [be]…denied." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 981 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003). Under these standards, the Alliance Defendants are not entitled to summary judgment. [21]

---

[21] The Erie Doctrine [*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)] applies to state law claims pending before a federal court pursuant to its supplemental jurisdiction. *See, Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1239 (10th Cir. 2018). Under *Erie,* this Court's duty is to "conform to [Wyoming's]…substantive law. And in the absence of definitive direction from the [Wyoming]…Supreme Court, [this Court should] predict the course that body would take if confronted with the issue." *Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260, 1267 (10th Cir. 2001)(diversity case).

**B.** **The Alliance Defendants Are Not Entitled to Summary Judgment on HRH's Claim For Malicious Prosecution.**

The Alliance Defendants challenge HRH's malicious prosecution claim on two grounds. They contend that (1) they had probable cause to file the two appeals; and (2) the appeals were not terminated in favor of HRH.  The Alliance Defendants fail on both arguments.

Wyoming law measures probable cause in a malicious prosecution claim by an objective reasonableness standard. *See, Henning v. Miller*, 44 Wyo. 114, 8 P.2d 825, 833 (1932).  The Wyoming Supreme Court has relied upon California common law to refine and develop Wyoming's probable cause standard. *See, Consumers Filling Station Co. v. Durante*, 79 Wyo. 237, 255, 333 P.2d 691, 697 (1958)(adopting standard from *Masterson v. Pig'n Whistle Corp.*, 161 Cal. App. 2d 323, 326 P.2d 918 (1958)). [22]  The probable cause standard in a malicious prosecution case can be distilled into this simple standard: "whether, as an objective matter, the prior action was legally tenable or not."  *Sheldon Appel Co. v. Albert & Oliker,* 47 Cal. 3d 863, 868, 765 P.2d 498, 499 (1989).  Under this standard, the Alliance Defendants did not have probable cause to file the second and third appeals. [23]

**1.** **As an Objective Matter, the Alliance Defendants Lacked Probable Cause For the Second Appeal, Because the Sufficiency Determinations Were Not "Final Administrative Orders" of the County Planning Director or Engineer.**

At the time the Alliance Defendants filed the second appeal, [24] LDR 8.8.3(A) allowed an appeal to the Board of County Commissioners only from a decision of the County Planning Director or the County Engineer.   (PASOF ¶¶ 8-10)  However, to be appealable under LDR 8.8.3(A), a decision of the Planning Director or Engineer had to be a "final administrative order."

---

[22] The Wyoming Supreme Court concluded that the law articulated in *Masterson* was consistent with that in *Henning v. Miller*, 44 Wyo. 114, 8 P.2d 825 (1932). *See, Consumers Filling Station Co.,* 79 Wyo. at 256, 333 P.2d at 698.

[23] Contrary to the Alliance Defendants' contention, the issue of probable cause is not "always a matter of law." (*See*, Doc. 88, at p. 12)  Indeed, the Wyoming Supreme Court concluded that where the facts are in dispute, probable cause is for the jury. *See, Consumers Filling Station Co.* 79 Wyo. at 256, 333 P.2d at 698 (*quoting Masterson v. Pig'n Whistle Corp*., 161 Cal. App. 2d 323, 337, 326 P.2d 918, 927 (1958))(emphasis added).

[24] It is clear that all Alliance Defendants participated in the preparation of the substance of each of the appeals. (PASOF ¶35.)

*Douglass v. Wyoming Dept. of Transportation*, 187 P. 3d 850, 854 (Wyo. 2008). A "final administrative order is one ending the proceedings, leaving nothing further to be accomplished. If the agency retains the matter for further action, the order is not final." *Id*; *see also, Merit Energy Co. v. Department of Revenue*, 313 P. 3d 1257, 1260 (Wyo. 2013); *Board of County Commissioners v. Exxon Mobil Corp.*, 55 P. 3d 714 (Wyo. 2002); *Ebzery v. City of Sheridan,* 982 P. 2d 1251, 1254 (Wyo. 1999); *MGTC, Inc. v. Public Service Commission*, 735 P. 2d 103, 106 (Wyo. 1987).

Under the foregoing two legal requirements, the Alliance Defendants' second appeal was objectively untenable. The sufficiency determinations were not a decision of either the Planning Director or the Engineer. The sufficiency determinations came from Mr. Roby Hurley, who was neither. (PASOF ¶ 18) Moreover, the sufficiency determinations were not "final administrative orders." As the Board described in its order dismissing the second appeal under Rule 12(b)(6), a sufficiency determination is a preliminary decision that signals the beginning of the review process. Many issues were left for future consideration. (*see,* PASOF ¶ 22; Exhibit 29 hereto at ¶ 36). The sufficiency determinations did not "end the proceedings." The only reasonable, objective conclusion is that the sufficiency determinations were not appealable decisions. Thus, the second appeal was objectively untenable and patently groundless.

The Alliance Defendants had no rational, objective basis to believe that the sufficiency determinations were final, appealable orders from the Planning Director. The sufficiency determinations themselves make clear that Roby Hurley was not the Planning Director. (PASOF ¶¶ 18) Moreover, the Alliance Defendants had read Teton County's motion to dismiss the first appeal, which raised the "final agency action" issue and explained in detail the applicable Wyoming law. (PASOF ¶¶ 42) Without any basis in law of fact to justify them, the Alliance Defendants proceeded anyway.

In their motion, the Alliance Defendants make no effort to explain how the deficiency

determinations were appealable.[25] Instead, the Alliance Defendants focus on two irrelevant issues. First, the Alliance Defendants claim they had a good faith belief that they had "standing," that is, that they were aggrieved persons entitled to file an appeal.  (DSOF ¶¶26-31; Doc. 88 at pp. 14-16)  The standing issue is independent from the appealability issue. [26] Second, the Alliance Defendants claim they had probable cause to file the second appeal because, on the substance of the issues raised in the second appeal, they were correct.  (DSOF ¶¶ 26-31; Doc. 88 at pp. 14-16) The substance of the issues the Alliance Defendants raised in the second appeal are now irrelevant. In dismissing the second appeal under Rule 12(b)(6), the Board assumed the truth of the substantive allegations of the Alliance Defendants and ruled, as a matter of law, those allegations did not state a valid claim on appeal.  The core issue for a probable cause analysis is not whether the Alliance Defendants were correct about the alleged flaws in the sufficiency determinations. The critical question is whether the sufficiency determinations were final administrative orders of the Teton County Planning Director or Engineer.   Clearly, they were not.   The Alliance Defendants had no probable cause to file the second appeal.

2.  **As an Objective Matter, the Alliance Defendants Lacked Probable Cause For the Third Appeal, Because the Planning Director's Rejection Letter Was Not a "Final Administrative Order" Required Under Wyoming Law for an Appealable Decision**

---

[25] By not raising it in their opening brief, the Alliance Defendants have waived it. *See, Estrada v. City of Las Cruces*, No. CIV 09-10 RB/CG, 2010 WL 11626773, at *13 (D.N.M. Jan. 12, 2010).  In any event, because the Alliance Defendants did not appeal the Board's decision dismissing the second appeal, the Board's findings (i.e., that the sufficiency determinations were not "final administrative orders" and not appealable) are collateral estoppel and cannot be relitigated. *See, Univ. of Wyoming v. Gressley*, 978 P.2d 1146, 1153 (Wyo. 1999); *Slavens v. Bd. of Cty. Comm'rs for Uinta Cty.*, 854 P.2d 683, 685 (Wyo. 1993)(administrative hearing conducted under authority of board of county commissioners).

[26] The Alliance Defendants make a passing reference to the involvement of legal counsel in drafting the appeals. (Doc. 88 at p.13)  However,  the Alliance Defendants have neither raised nor proven a reliance on counsel defense, a burden that is theirs to carry. *See, O'Connor v. Tice*, 281 Va. 1, 10–11, 704 S.E.2d 572, 577 (2011); *Brown v. Monticello State Bank of Monticello*, 420 N.W.2d 475 (Iowa 1988); *Chipouras v. A J & L Corp*., 223 Va. 511, 290 S.E.2d 859 (1982). Moreover, have asserted privilege to communications with counsel. (See Exhibit 75 hereto)

In the third appeal, the Alliance Defendants sought to appeal the rejection letter from Tyler Sinclair, Teton County's Planning Director. (PASOF ¶¶23-30)  In their motion, the Alliance Defendants make no effort to explain how the rejection letter was properly appealable under LDR 8.8.3(A).  Indeed, they cannot justify the third appeal. As the Board explained in its order dismissing the third appeal under Rule 12(b)(6), (PASOF ¶ 29), Mr. Sinclair's letter was not a final decision or interpretation. Rather, as Mr. Sinclair indicated in the letter itself, the questions that prompted the rejection letter would be answered and evaluated later in the process of reviewing the Bar J applications. (Exhibit 37 hereto, at ¶ 27)  Without question, the rejection letter was not a final administrative order.  Despite that, without probable cause, the Alliance Defendants filed the third appeal anyway. [27]

As with the second appeal, the Alliance Defendants seek to justify the third appeal by arguing that (1) they had standing to bring the appeal and (2) they were correct in their criticism of the Planning Director's rejection letter. (DSOF ¶¶ 32-39; Doc. 88 at pp. 16-17) Neither argument explains how the rejection letter was appealable in the first place.  Despite having no factual or legal justification for doing so, the Alliance Defendants proceeded to file the third appeal.

### 3.   The Alliance Defendants Filed the Second and Third Appeals With Malice.

HRH has ample evidence that the Alliance Defendants filed the second and third appeals with malice.  "[M]alice is shown when it appears that the prosecution was instituted from any improper or wrong motive; and it may be inferred from the want of probable cause, though that inference is not a necessary one."  *Boyer v. Bugher*, 19 Wyo. 463, 120 P. 171, 176 (1912).  An improper or wrong motive consists of any "purpose other than that of securing the proper adjudication of the claim on which [the prior proceedings]…are based." *Restatement (Second) of Torts* § 676 (1977); *see, Huber v. Thomas*, 45 Wyo. 440, 19 P.2d 1042, 1045 (1933)(Malice is "any motive other than

---

[27] Indeed, the filing of the third appeal was so inexplicable that it prompted Teton County to surmise that the Alliance Defendants' true motive was to stall HRH's application in the hopes that it would be withdrawn or never considered. (PASOF ¶28)

one to further the ends of justice.")  "Malice is always a question of fact for the jury…." *Consumers Filling Station Co. v. Durante*, 79 Wyo. 237, 255, 333 P.2d 691, 697 (1958).

HRH has demonstrated that the Alliance Defendants lacked probable cause to file the second and third appeals.  This Court may thus infer the requisite malice.  Moreover, the evidence is abundant that the Alliance Defendants filed the second and third appeals for an improper motive – to cause delay in HRH's application with Teton County in order to cause HRH to lose its option agreement with Humphrey and, ultimately, its opportunity to develop the Bar J Property. (PASOF ¶¶ 33-41) Indeed, by the time the Alliance Defendants had filed the third appeal, even Teton County had concluded that their motive in pursuing appeals may have been to stall HRH's application in the hope that it would be withdrawn or never considered. (PASOF ¶ 28)  At a minimum, this evidence creates a material question of fact as to malice.

### 4.      The Second and Third Appeals Were Terminated in Favor of HRH.

The Alliance Defendants contend that none of the appeals were terminated in HRH's favor because (1) none of the appeals constituted an action against HRH; and (2) none of the appeals were resolved on the merits. The Alliance Defendants are wrong on both issues.

#### a.      The second and third appeals were actions against HRH.

The second and third appeals were in fact actions against HRH. [28]  The Alliance Defendants have admitted that both the second and third appeals arose from HRH's application to amend the Bar J Master Plan. (PASOF ¶¶ 20, 26)  HRH in fact intervened in the second and third appeals, something the Alliance Defendants stipulated to. (PASOF ¶¶ 20, 26) Thus, HRH was a party to each of the appeals.  Moreover, the Alliance Defendants knew and intended that the filing of the

---

[28] The first appeal was also an action against HRH for the same reason the second and third appeals were.  However, because the first appeal was filed before HRH filed its actual application to amend the Bar J Master Plan, and because the first appeal was resolved by a mutual dismissal, it is not part of HRH's prima facie case for malicious prosecution. However, the first appeal is highly relevant to the malicious prosecution claim because the proceedings therein it made clear to the Alliance Defendants, before they ever filed the second and third appeals, that under Wyoming law a valid claim for appeal requires a "final agency action," a concept the Alliance Defendants thereafter consciously ignored in pursuing the second and third appeals. (See PASOF ¶¶ 11-16, 42)

second and third appeals would trigger the automatic stay of LDR 8.8.3(C) and stop HRH's application to amend the Bar J Master Plan in its tracks. (PASOF ¶38)   Indeed, the second and third appeals were directed entirely at HRH and its effort to amend the Bar J Master Plan.  Under similar circumstances, courts in other common law states [29] have concluded that previous administrative actions constituted actions against the malicious prosecution plaintiff. *See,  Zeller v. Consolini*, 235 Conn. 417, 425-426, 667 A.2d 64, 68 (1995); *Hillside Assocs. v. Stravato*, 642 A.2d 664, 669 (R.I. 1994).

> **b.**     **There is no requirement under Wyoming's common law of malicious prosecution that the prior action be resolved on the merits.**

No Wyoming case precedent on malicious prosecution requires that the prior action be resolved on the merits. In fact, even a prior dismissal without prejudice – a ruling clearly not on the merits – can support a claim for malicious prosecution in Wyoming. *See, McIntosh v. Wales*, 21 Wyo. 397, 134 P. 274 (1913).

> **c.**     **In any event, the second and third appeals were resolved on the merits in HRH's favor.**

The Alliance Defendants argue that the second and third appeals were not terminated on the merits because they were dismissed for "lack of standing."  (Doc. 88, p. 19) However, the Alliance Defendants ignore a fundamental aspect of the Board's orders dismissing the second and third appeals.

In the second appeal, the Board expressly found that the sufficiency determinations were not "final agency actions" that could give rise to a valid claim on appeal.  For that reason, and invoking an entirely separate and independent basis for dismissal, the Board dismissed the second appeal under Rule 12(b)(6), *Wyo. R. Civ. P.*, for failing to state a claim for relief.  (PASOF ¶¶ 19-22)   In the third appeal, the Board expressly found that the rejection letter was not a "final agency action" that could give rise to a valid claim on appeal.  For that reason, and again invoking an

---

[29] With no Wyoming precedent, the Wyoming Supreme Court would look to the common law of other common law jurisdictions for guidance in this situation.  *See, Krug v. Reissig*, 488 P.2d 150, 152 (Wyo. 1971).

entirely separate and independent basis for dismissal, the Board dismissed the third appeal under Rule 12(b)(6), *Wyo. R. Civ. P*., for failing to state a claim for relief.  (PASOF ¶¶ 23-29)  The Alliance Defendants never appealed either dismissal.  The dismissals are now *res judicata*.

Thus, the Board dismissed both the second and third appeals under Rule 12(b)(6), *Wyo. R. Civ. P*. for failing to state a valid claim on appeal.  It is black-letter law in Wyoming that a dismissal under Rule 12(b)(6) for failure to state a claim operates as an adjudication on the merits, unless the dismissal order states otherwise.  *See, Whitham v. Feller*, 2018 WY 43, ¶ 25, 415 P.3d 1264, 1270 (Wyo. 2018) (holding that 12(b)(6) dismissal operated as a dismissal with prejudice on the merits, unless the order states otherwise); *see also,* Rule 41(b)(1), *Wyo. R. Civ. P*. Thus, because they do not "state otherwise," the Board's orders dismissing the second and third appeals under Rule 12(b)(6) operated as an adjudication on the merits of each appeal.  Such dismissals satisfy any requirement that may exist under Wyoming's common law of malicious prosecution for the prior actions to have been resolved on the merits.

## C.   The Alliance Defendants Are Not Entitled to Summary Judgment on HRH's Claim For Tortious Interference with Prospective Economic Advantage/Business Expectancy.

The Alliance Defendants recycle their probable cause argument and use it to ask this Court to dismiss HRH's claim for tortious interference with prospective economic advantage/business expectancy.  This Court should deny that request.

### 1.   HRH had two valid business expectancies.

Under Wyoming law, to prove a valid business expectancy, "[i]t need not be absolutely certain that the prospective contract would have been made were it not for such interference. A reasonable assurance thereof in view of all the circumstances, is generally sufficient."  *Martin v. Wing*, 667 P.2d 1159, 1162 (Wyo. 1983).  Under this broad test, HRH has established two valid business expectancies.

First, HRH had a valid business expectancy in the Bar J Contract, the option contract HRH entered into with Humphrey, LLC ("Humphrey") in April of 2015 to acquire the Bar J Property.

(PASOF ¶¶ 1-4)  As both Humphrey and HRH understood, HRH's entire effort to develop the Bar J Property rested upon the premise that HRH could acquire the Bar J Property.  (PASOF ¶¶ 1-7)  To that end, HRH and Humphrey extended the Bar J Contract twice to accommodate HRH's continued efforts to obtain the entitlements from Teton County.  (PASOF ¶¶ 1-4)   In light of this, HRH had a reasonable assurance of a continuation of the Bar J Contract. *See, Restatement (Torts) Second*, § 766B, *comment c* (1979)(tortious interference with business expectancy would include "[i]nterference with the exercise by a third party of an option to renew or extend a contract with the plaintiff."); *see also, City of San Jose v. Office of Comm'r of Baseball*, No. C-13-02787 RMW, 2013 WL 5609346, at *15 (N.D. Cal. Oct. 11, 2013), *aff'd sub nom. City of San Jose v. Office of the Com'r of Baseball*, 776 F.3d 686 (9th Cir. 2015)(delay preventing and frustrating exercise of option agreement stated claim for interference with prospective economic advantage); *Tel. & Data Sys., Inc. v. Am. Cellular Network Corp.*, 966 F.2d 696, 700 (D.C. Cir. 1992)(interference with option).

Second, HRH also had a valid business expectancy in the opportunity to develop the Bar J Property according to the proposed Amended Bar J Master Plan. (See, PASOF ¶¶ 17-18)  That opportunity was embodied in the application HRH filed March 2, 2017, with Teton County to amend the Bar J Master Plan.  (PASOF ¶¶ 17-18)  According to HRH's expert, Scott Pierson, HRH's application that application was a "reasonable, credible application" with a "reasonable chance of being approved." (PASOF ¶ 17)  Moreover, HRH's development plan, as framed in the application to amend the Bar J Master Plan, could reasonably have been expected to result in the development described by the expert opinions of Stephen Hancock (Doc. 44, at pp. 3-4, 167-180; Exhibit 76) and Scott Hampton (PASOF ¶ 46).   Under these facts, HRH had a reasonable assurance in the development of the Bar J Property according to the application to amend the Bar J Master Plan. *See, Edmund Opler, Jr. Living Tr. v. Albrecht*, No. 93-CV-0199-B, 1995 WL 465827, at *13–14 (D. Wyo. May 30, 1995)(reasonable expectancy to market and sell real estate); *Ahrenholtz v. Laramie Econ. Dev. Corp.*, 2003 WY 149, ¶ 13, 79 P.3d 511, 514 (Wyo.), *amended on reh'g*, 2003 WY 149A, ¶ 13, 82 P.3d 714 (Wyo. 2003)(sufficiently certain development

opportunity to justify denial of summary judgment); *Manna Funding, LLC v. Kittitas Cty.*, 173 Wash. App. 879, 295 P.3d 1197 (2013)(reasonably certain post-zoning approval development plan could serve as basis for interference with prospective economic advantage claim, although plaintiff's claim failed to satisfy standard).

### 2.    The Alliance Defendants were aware of HRH's business expectancies.

Before filing the second and third appeals, the Alliance Defendants were aware that HRH had a time sensitive option contract to purchase the Bar J Property from Humphrey.   (PASOF ¶ 36)  This satisfies the second prong of HRH's prima facie case for tortious interference with business expectancy.  *See, Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, 192 F. Supp. 3d 1215, 1228 (D. Kan. 2016)("the law does not require that defendants know the details of the contract, only that they knew of the relationship.")  Likewise, the Alliance Defendants unquestionably knew of HRH's development plan, as embodied in HRH's application to amend the Bar J Master Plan. (PASOF ¶ 37)

### 3.    The Alliance Defendants intentionally and improperly interfered with HRH's business expectancies.

The Alliance Defendants intentionally interfered with HRH's two business expectancies. Under Wyoming law,[30] "[t]he interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action."  *Restatement (Second) of Torts* § 766B, comment d (1979).  HRH has satisfied this standard.

The Alliance Defendants filed the second and third appeals knowing and intending that each of the appeals would trigger the automatic stay of 8.8.3(C).  (PASOF ¶ 38)  They knew and intended that the filing of the appeals would thus cause delay to HRH's application process and

---

[30] Wyoming has adopted *Restatement (Second) of Torts* § 766B in defining the tort of intentional interference with prospective economic advantage/business expectancy. *See, Martin v. Wing*, 667 P.2d 1159, 1162 (Wyo. 1983); *Ahearn v. Anderson-Bishop P'ship*, 946 P.2d 417, 423–24 (Wyo. 1997)

development efforts on the Bar J Property. (PASOF ¶¶ 37-40)  They planned and intended that the inevitable delay from the automatic stay would discourage Humphrey from continuing to deal with HRH. (PASOF ¶ 39)  They knew and intended that the delay would make developing the Bar J Property too expensive for HRH. (PASOF ¶ 40)   To create the delay they needed, the Alliance Defendants knew all they had to do was to keep filing appeals. (PASOF ¶ 38) Ultimately, the delay had its intended effect: Humphrey pulled out and refused to extend the option further, taking with it HRH's planned development of the Bar J Property according to its application to amend the Bar J Master Plan. (*See,* PASOF ¶¶ 31-32)  At a minimum, this evidence establishes a question of fact as to the Alliance Defendants' intent to interfere with HRH's business expectancies. *See, Ahrenholtz v. Laramie Econ. Dev. Corp.*, 2003 WY 149, ¶ 21, 79 P.3d 511, 516 (Wyo.), *amended on reh'g*, 2003 WY 149A, ¶ 21, 82 P.3d 714 (Wyo. 2003)(Issue of intentional interference is a fact question for the jury.)

The Alliance Defendants' interference with HRH's two business expectancies was also improper.  The Wyoming Supreme Court has avoided crafting a mechanical rule to determine whether conduct is improper or justified. *See, Basin Elec. Power Co-op.-Missouri Basin Power Project v. Howton*, 603 P.2d 402, 404 (Wyo. 1979).  Because whether conduct is improper depends on the individual facts of each case, Wyoming courts are instructed that the issue should be left to the jury. *See, Examination Mgmt. Servs., Inc. v. Kirschbaum*, 927 P.2d 686, 698 (Wyo. 1996).  Nevertheless, Wyoming has adopted *Restatement (Second) of Torts* § 767 to guide juries in determining whether interference is improper. *See, Ahearn v. Anderson-Bishop P'ship*, 946 P.2d 417, 423–24 (Wyo. 1997).

Under Section 767, filing of groundless litigation can be improper conduct giving rise to liability for intentional interference with business expectancy. *Restatement (Second) of Torts* § 767, comment d ("Prosecution of civil suits").  Moreover, under Section 767, conduct that is contrary to established public policy or that violates judicial precedent can be improper conduct giving rise to liability for intentional interference with business expectancy. *Restatement (Second) of Torts* § 767, comment d ("Unlawful conduct").   Under either and both of the foregoing,

26

engaging in malicious prosecution and/or pursuing objectively baseless litigation would patently qualify as improper conduct. Indeed, courts from around the country have found that pursuing groundless litigation for the purpose of interfering with a business expectancy constitutes improper conduct. *See, Silver v. Mendel*, 894 F.2d 598, 605–06 (3d Cir. 1990)(filing of involuntary bankruptcy petition); *Diamond 67, LLC v. Oatis*, 167 Conn. App. 659, 681, 144 A.3d 1055, 1069 (2016)(Developer's claim for vexation litigation against, among others, a group of citizens who opposed the project on environmental grounds, alleging that defendants' conduct in intervening in plaintiff's proceedings before the town planning and zoning commission had delayed plaintiff in obtaining the necessary final approval for the project, forcing developer to abandon development plan); *Hillside Assocs. v. Stravato*, 642 A.2d 664, 669 (R.I. 1994)(groundless and malicious appeal from zoning board's grant of building permit); *G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 273, 571 N.E.2d 1363, 1370 (1991)(objectively groundless civil action intended to prevent developer from obtaining property); *Kelly-Springfield Tire Co. v. D'Ambro*, 408 Pa. Super. 301, 311, 596 A.2d 867, 872 (1991)(filing of groundless litigation intended to prevent sale of property another); *Employers' Fire Ins. Co. v. Love It Ice Cream Co.*, 64 Or. App. 784, 792, 670 P.2d 160, 165 (1983) (Insurance Company filed litigation which it knew to be unfounded for the purpose of delaying payment of insured's claim and to reduce value of insured's business.); *Restatement (Second) of Torts* § 680 (1977).

Again brandishing their "probable cause" argument, the Alliance Defendants contend they cannot be liable for tortious interference with HRH's business expectancies, because they acted in good faith to protect their interest "in how the Bar J Property might be developed." The argument is meritless. First, as HRH has established, the Alliance Defendants did not have probable cause to file the second and third appeals. Second, the evidence is abundant that the Alliance Defendants acted with the improper purpose of delaying and harming HRH's option contract with Humphrey and development of the Bar J Property. Third, the so-called interest of the Alliance Defendants "in how the Bar J might be developed" is insufficient to create a safe harbor from HRH's claim of tortious interference. The interest to be protected must be a *bona fide*, legally protected interest.

*See, Sunshine Custom Paints & Body, Inc. v. S. Douglas Highway Water & Sewer Dist.*, 2007 WY 206, ¶ 26, 173 P.3d 398, 405 (Wyo. 2007)(no legally protected interest).  The Alliance Defendants' so-called interest rests entirely on the unfounded premise that they were "owners in close proximity" to the Bar J.  This is, in essence, the "standing" argument the Alliance Defendants made to justify their second and third appeals.  The Board rejected that standing argument.  That ruling is now collateral estoppel against the Alliance Defendants.  As a matter of law, therefore, the Alliance Defendants cannot establish a legally protected interest to give them safe harbor from their improper conduct.

### D.       The Wrongful Conduct of the Alliance Defendants Caused Damage to HRH.

In Wyoming, a claim for malicious prosecution requires proof that the malicious prosecution proximately caused damage. *See, Cates v. Eddy*, 669 P.2d 912, 920 (Wyo. 1983)(approving jury instruction).  A claim for intentional interference with prospective economic advantage/business expectancy requires the same element of causation. *See, Texas W. Oil & Gas Corp. v. Fitzgerald*, 726 P.2d 1056, 1064 (Wyo. 1986) The essence of proximate cause is foreseeability.  *Wood v. CRST Expedited, Inc.*, 2018 WY 62, ¶ 9, 419 P.3d 503, 506 (Wyo. 2018)("The issue of proximate cause is generally one to be decided by the jury, and resolution of that issue depends on the foreseeability of the risk presented by the actor's conduct.") A determination of that foreseeability is ultimately an issue for the jury. *See, Wood*,  419 P.3d at 506.

HRH has produced ample evidence of causation under these standards. By filing the second and third appeals, the Alliance Defendants *intended* to cause continuing delay to HRH's application review process. (PASOF ¶¶ 37-40) The Alliance Defendants intended to create and foresaw the substantial risk to HRH from those delays: HRH would lose its Bar J Contract and, as a result, its tangible opportunity to develop the Bar J Property according to the amended Bar J Master Plan. (PASOF ¶¶ 35-40)  In fact, as established by Babe Humphrey, it was precisely the

delay caused by the Alliance Defendants' appeals that caused Humphrey to refuse to extend the option agreement with HRH, destroying HRH's business expectancies. (PASOF ¶¶ 31-32) [31]

In Wyoming, a plaintiff must prove damages to a reasonable degree of certainty. *See, Scherer, II v. Laramie Reg'l Airport Bd.*, 2010 WY 105, ¶ 9, 236 P.3d 996, 1001 (Wyo. 2010). Through its expert witnesses, HRH has proven three categories of damages to a reasonable degree of certainty. (PASOF ¶¶ 43-46)

### E.   The Alliance Defendants Are Not Entitled to Immunity Under the Petition Clause of the First Amendment.

The Alliance Defendants are not entitled to summary judgment based upon their Petition Clause defense.[32]  As the 10th Circuit has recognized, "…the right to petition is not an absolute protection from liability." *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 891 (10th Cir. 2000).  Indeed, the Petition Clause provides no refuge to the Alliance Defendants if their alleged petitioning activity – the filing of the second and third appeals – was a "sham." The second and third appeals were a "sham" if they were "(1) objectively baseless and (2) subjectively intended to abuse process." *CSX Transp. Inc. v. Gilkison*, No. CIV.A. 5:05CV202, 2008 WL 925550, at *3 (N.D.W. Va. Apr. 2, 2008); *see, LDE Corp. v. Dyno Nobel, Inc.*, No. 04-CV-0137-J, 2005 WL 8155435 (D. Wyo. Sept. 13, 2005)(consideration of sham exception to *Noerr-Pennington* immunity on summary judgment in patent/antitrust context).  Under this standard, the Alliance Defendants are not entitled to summary judgment based upon their Petition Clause defense.

As HRH has shown in Sections III.B.1. and 2 above, the second and third appeals were objectively baseless. Communications between and among the Alliance Defendants during the

---

[31] In footnote 11, the Alliance Defendants argue that HRH's claim for tortious interference fails because HRH retained the right to exercise the option.  This argument is illogical and irrelevant.  HRH retained that right up to the time the Alliance Defendants caused Humphrey to refuse to grant any further extensions. HRH's right to exercise the option does not diminish the effect of the Alliance Defendants' improper interference with HRH's opportunity/expectancy to obtain further extensions of that agreement.

[32] The Alliance Defendants continue to insist on mislabeling calling HRH's claims as "SLAPP claims."  HRH rejects that pejorative.  The Alliance Defendants have asserted the Petition Clause defense.

operative events in this case prove without question that they intended to use the appeal process within LDR 8.8.3 to create delay in HRH's efforts to develop the Bar J Property, intending thereby to chase Humphrey away and thwart HRH's efforts altogether. (PASOF ¶¶ 33-41)  In light of that evidence, the self-serving excuse the Alliance Defendants crafted after this law suit was filed – that they were simply trying to get Teton County to follow its rules – fizzles mightily.  The Petition Clause does not protect such malicious, groundless activity.  Indeed, the second and third appeals demonstrate perfectly the term "sham."

IV.  **CONCLUSION**

For the foregoing reasons, this Court should deny the motion for summary judgment of the Alliance Defendants.

DATED this 2nd day of March, 2020.

/s/ Richard R. Thomas
Richard R. Thomas, Bar No. 7-5865
Vonde M. Smith, Bar No. 6-2832
SMITH LC
Post Office Box 8729
Jackson, Wyoming 83002
T: 307-201-6000
E: rthomas@smith-lc.com
E: vsmith@smith-lc.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO**

**MOTION FOR SUMMARY JUDGMENT OF THE ALLIANCE DEFENDANTS [Docs.87**

**and 88]** was electronically filed via CM/ECF this 2nd day of March, 2020, and served via ECF on

all parties who have requested notice:

Keith Gingery
Erin E. Weisman
John Graham
Teton County Attorney's Office
PO Box 4068
180 South King Street
Jackson, WY 83001
keith@tetoncountyattorney.com
erin@tetoncountyattorney.com
john@tetoncountyattorney.com

*Attorneys for Teton County, Wyoming and Board of County Commissioners, Teton County, Wyoming*

Thomas A. Thompson
MacPHERSON, KELLY & THOMPSON, LLC
616 West Buffalo Street
PO Box 999
Rawlins, WY 82301
tthompson@wyomingattorneys.net

*Attorneys for Teton County, Wyoming and Board of County Commissioners, Teton County, Wyoming*

Paula Fleck
HOLLAND AND HART
25 South Willow Street, Suite 200
Jackson, WY 83001
pfleck@hollandandhart.com

*Attorneys for Richard D. Jaquith, Patricia P Jaquith, James M. Speyer; Gerald J. Kitchen, Diana Kitchen*

James D. Bramer
JAMES D. BRAMER
1298 Main Street, Unit A4225
Windsor, Colorado 80550
jbramer@bramerlegal.com

*Attorneys for Gerald J. Kitchen and Diana Kitchen*

/s/ Kristin E. Davenport
Kristin E. Davenport